**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**



**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**

50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

**WILLIAM J. MARTINI
        JUDGE**

**LETTER OPINION**

February 25, 2008

James J. Treanor
Legal Services of New Jersey
100 Metroplex Drive
P.O. Box 1357
Edison, NJ 08818
        *(Attorney for Plaintiff)*

Karen T. Callahan
Special Assistant United States Attorney
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
        *(Attorney for Defendant)*

        RE:   **Figueroa v. Commissioner of Social Security
              Civ. No. 06-4663 WJM**

Dear Counsel:

        Plaintiff Aida Figueroa ("Figueroa") brings this action pursuant to 42 U.S.C. § 1383(c)(3) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for

Supplemental Security Income ("SSI").  The Commissioner supports a reversal and remand for further proceedings.  Figueroa argues in favor of a reversal and remand merely for the calculation of benefits.  For the reasons articulated below, Figueroa's petition is granted in part and denied in part, and the Commissioner's decision is reversed and remanded for further proceedings.

## **Background**

Figueroa is a forty-year-old woman with a documented history of mental health problems reaching back to 1996 as well as a history of back pain and arthritis of the knee. (R. 23.)  Figueroa applied for SSI benefits on March 25, 2003 alleging disability resulting from depression and a herniated disc as of December 30, 2002.  (R. 79; Pl.'s Br. 2.)  The application was denied, and a request for reconsideration was also denied.  (R. 50-52.)  At Figueroa's request, a hearing to review the application was held before Administrative Law Judge Dennis O'Leary ("ALJ") on October 28, 2004.  (R. 234.)  The ALJ denied Figueroa's application on January 17, 2004.  (R. 39-46.)  After Figueroa's timely appeal, the Appeals Counsel vacated the ALJ's decision and remanded the case to the ALJ for further development of the record, and more specifically, to "obtain additional evidence concerning the claimant's musculoskeletal and mental impairments," "give further consideration to the claimant's maximum residual functional capacity," and "obtain evidence from a vocational expert."  (R. 48-49.)

On November 17, 2005, a second hearing was held before the ALJ.  (R. 258.)  The ALJ again denied Figueroa's application on January 5, 2006.  (R. 33.)  In explaining his decision, the ALJ evaluated the evidence by applying the familiar five-step analysis for determinations of disability claims.  (R. 28.)  First, the ALJ found that Figueroa had not engaged in any substantial activity since her alleged onset date.  (R. 28.)  Second, he found that Figueroa suffered from several severe impairments, including chronic lower back pain with disc herniation, major depression, anxiety, and arthritis of the knee with post-arthroscopic surgery.  (R. 28-29.)  At the third step, the ALJ determined that none of these impairments met or equaled in severity the Listing of Impairments located at Appendix 1, Subpart P, Regulation No. 4 (hereinafter "Listing").  (R. 29.)  Then, at the fourth step, he found that Jones retained the residual functional capacity ("RFC") to perform sedentary work involving the lifting and carrying of up to ten pounds occasionally and five pounds frequently; standing and walking up to two hours in an eight-hour day; and sitting up to six hours in an eight-hour day.  (R. 32.)  In addition, he found that Figueroa's non-exertional limitations, including mild restriction of the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, did not significantly compromise her ability to perform sedentary work as long as she had no contact with the

public and only limited contact with co-workers and supervisors. (R. 32-33.) At the fifth and final step, the ALJ concluded, based on his factual findings and the testimony of a vocational expert, that Figueroa could perform a significant number of jobs in the national economy including, but not limited to, a dial marker, a document preparer, a bench hand, and a check weigher. (R. 33.) The Appeals Council denied review of the ALJ's second decision on July 28, 2006. (R. 8-11.)

Figueroa timely appeals the ALJ's ruling. She argues that substantial evidence exists in the record to support her disability application, and thus, her case should be reversed and remanded for a calculation of benefits. (Pl.'s Br. 39-40.) The Commissioner agrees that this case should be remanded, but argues that the appropriate remand is for "further administrative proceedings due to legal error." (Def.'s Br. 2.) Figueroa's appeal is now before the Court.

### **Standard of Review**

This Court exercises plenary review over the Commissioner's legal conclusions and is bound by the Commissioner's factual findings if they are supported by substantial evidence. *Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Secretary of Health & Human Servs.,* 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance"). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004). Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner.

If substantial evidence supports the Commissioner's decision, courts must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the decision is not supported by substantial evidence, then courts "may, under 42 U.S.C. § 406(g) affirm, modify or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing." *Podedworny v. Harris*, 745 F.3d 210, 221 (3d Cir. 1984). An award of benefits is appropriate when "the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*. at 222.

**Discussion**

The focus of the Court's review of the Commissioner's denial of benefits in this case is narrowed by the positions of the parties.  The Commissioner, in his brief, requests a voluntary reversal and remand of this case for further proceedings pursuant to 42 U.S.C. § 405(g).  Figueroa, although in agreement regarding the reversal of the Commissioner's decision, argues in favor of a remand only for the purpose of calculating benefits.  In the alternative, Figueroa seeks a remand to the ALJ for a reassessment of Figueroa's claim.  Thus, it is this Court's obligation to determine the narrow issue of whether the record, as currently constituted, has been fully developed and whether substantial evidence supports a finding of disability.  If the record cannot support a grant of benefits, the Court must remand this case for further proceedings consistent with this Court's opinion.

**I.     Listing 12.04 - Affective Disorders**

A claimant will meet the Listing in 12.04 for affective disorders, including bipolar disorder, if the claimant exhibits the following: (1) a combination of four symptoms in the "A" criteria, including anhedonia, appetite disturbance with change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, hallucinations, delusions, or paranoid thinking; and (2) two marked functional limitations in the "B" criteria, including marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration.[1]  Appendix 1, Subpart P, Regulation No. 4.

In assessing Figueroa's affective disorder, the ALJ found that although Figueroa exhibited the requisite number of symptoms in the first category, she did not experience the relevant degree of limitation in the second category.[2]  (R. 31).  Figueroa disputes this finding and relies on the medical assessment of her treating physician, Dr. Williams, who opined that Figueroa experienced at least two marked functional limitations.  Figueroa argues that based upon the medical evidence, her impairments meets a Listing under the third step of the five-step sequential analysis, and thus, the ALJ should have found her

---

[1] With regards to a separate and independent qualification for meeting the disability criteria in Listing 12.04, there is no evidence in the record, and no party asserts, that Figueroa meets the relevant "C" criteria of 12.04.

[2] The ALJ found that Figueroa held the requisite Listing 12.04 symptoms, including (1) appetite disturbance, (2) sleep disturbance, (3) decreased energy, (4) difficulty concentrating or thinking, and (5) anxiety.  (R. 31-32.)

4

disabled.

### A.     Figueroa's Mental Health History

Figueroa's psychiatric history is fairly well documented.  Figueroa was first examined by Dr. Bhalla on June 3, 1996 for depression.  (R. 140-42.)  She reported feeling overwhelmed with caring for her children, difficulty sleeping, and crying spells.  She reported being briefly hospitalized after finding out about an affair.  (R. 140.)  Dr. Bhalla found that her mood was moderately dysphoric and her affect was somewhat constricted.  (R. 141.)  Dr. Bhalla further noted that her concentration was impaired.  (R. 140.)  Individual psychotherapy was recommended.  (R. 142.)

In April 1, 1997, Figueroa reported more depression and occasional suicidal ideation.  (R. 143.)  She reported that she tried to kill herself two years ago but denied any present suicidal ideation. (R. 143.)  She was diagnosed with recurrent major depression and placed on Paxil.  (R. 143.)  Notes from 1997 through 1998 state that Figueroa reported feeling better on Paxil and Wellbutrin and then, worse despite her compliance to her medication regimen.  (R. 156-58.)  Buspar was therefore added to her regimen.  (R. 156.)  In mid-October 1998, however, Figueroa stopped taking her medication due to a pregnancy with her fourth child.  (R. 153.)

The treatment notes from the Mental Health Clinic of Passaic continued to document Figueroa's struggle with depression and anxiety.  At times remarking that Figueroa was "doing better" on psychotropic medication, progress notes from July 28 to October 29, 1999 reported that Figueroa had major depression with difficulty concentrating.  (R. 152.)  Through the end of 2000, progress notes indicated that Figueroa continued to feel anxious and depressed despite periods of "feeling better" and being "stable" on medication, although she denied delusions or suicidal ideation.  (R. 149-51.)

Dr. Williams treated Figueroa regularly from the start of 2001 through 2003.  Dr. Williams consistently wrote that Figueroa was overwhelmed by the multiple stressors in her life, including the care of her children.  (R. 144-48, 159-63.)  Dr. Williams noted that, at times, Figueroa appeared to be "doing OK," "sleeping well," "appetite OK," and responding well to various medication regimes.  (R. 144-48, 159-63).  These notes, however, are interspersed with continued problems with sleeping, eating, concentration, irritability, and depression.  (R. 144-48, 159-63.)  Dr. Williams's treatment notes end in May 2003 with a final entry stating that Figueroa "seems totally overwhelmed with children, depressed, sad, decreased libido . . . irritable with mood swings."

In two reports completed on January 22, 2004 and October 26, 2005, Dr. Williams

5

diagnosed Figueroa with bipolar disorder (Type II) and concluded that Figueroa met the requirements of Listing 12.04 for affective disorders. Specifically, Dr. Williams identified Figueroa with the following signs and symptoms: (1) poor memory, (2) appetite disturbance with weight change, (3) sleep disturbance, (4) mood disturbance, (5) emotional lability, (6) anhedonia or pervasive loss of interests, (7) difficulty thinking or concentrating, (8) social withdrawal or isolation, (9) decreased energy, (10) generalized persistent anxiety, and (11) hostility and irritability. (R. 187-88, 206-07.) Additionally, Dr. Williams assessed Figueroa's functional restrictions and found that Figueroa had: (1) marked difficulties in maintaining social functioning; (2) frequent or marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and (3) experienced marked or repeated (three or more) episodes of deterioration or decompensation in work or work-like settings which cause her to withdraw from that situation or to experience exacerbation of signs and symptoms. (R. 188-191, 207-10.)

### B.     Weight Accorded to Dr. Williams's Opinion

Figueroa argues that the ALJ improperly disregarded the opinion of Dr. Williams, who opined that she experienced the relevant medically documented symptoms and limitations for the Listing. The Commissioner counters that the ALJ appropriately discounted Dr. Williams's opinion and rejected the findings in the mental impairment questionnaire because Dr. Williams's opinions regarding the nature and severity of Figueroa's impairments were (1) contradicted by Figueroa's treatment records and (2) inconsistent with Figueroa's regular activities.

Treating physician's opinions are accorded great weight "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(citations omitted). Thus, Social Security regulations give treating physician's opinions controlling weight when his or her opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2).

Although the ALJ may choose to discredit the opinion of a treating physician upon the conflicting opinion of another medical professional, the ALJ "cannot reject evidence for no reason or for the wrong reason." *Morales*, 225 F.3d at 317 (citations omitted). Furthermore, the ALJ must "consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Id*. The ALJ's mere "speculative inferences from medical reports, . . . his or her own credibility judgments, . . . or lay opinion" cannot be a basis to reject the treating physician's opinion. *Id*. Ultimately, even if the ALJ determines that a treating physician's opinion should not be given controlling

weight, the ALJ must still give appropriate weight to the treating opinion based upon a calibration of several factors: (1) the examining source, (2) the treating relationship, (3) the length of the treating relationship, (4) the nature and extent of the treating relationship, (5) medical supportability of the opinion, (6) consistency, and (7) specialization of the treating source. *Id*.

In assessing the treating physician's opinion, the ALJ found that Figueroa's treating physician's assessments of her mental impairments were not controlling and deserved "lesser weight under 20 CFR 416.927." (R. 29.)  Specifically, the ALJ remarked, "the questionnaires are inconsistent with the treatment notes, which often show that the claimant's symptoms were stable with medication . . . .  In addition, I note that the claimant is able to manage the household and take care of her children.  The claimant has anxiety, but the focus of Dr. Williams's reports appears to be depression." *Id*.  Thus, the ALJ concluded that despite Dr. Williams's treatment relationship with Figueroa, the ALJ would not fully credit the treating physician's opinion, and that Figueroa's "depression and anxiety do not meet Listings 12.04 or 12.06." (R. 29.)

The Court first notes that it is unable to discern which specific inconsistencies the ALJ found between the treatment notes and the questionnaires filled out by Dr. Williams.  During the relevant period of alleged disability, beginning in 2003, Dr. Williams's treatment notes show that Figueroa was consistently "overwhelmed" with caring for her high-needs children. (R. 159).  In March 2003, Dr. Williams noted that although Figueroa reported no psychosis, delusions, or suicidal/homicidal ideation, Figueroa was overwhelmed by her children's behaviors and had somatic complaints. (R. 159.)  In April 2003, Dr. Williams continued to note that Figueroa was overwhelmed with her children, but that she was "calmer than her last visit." (R. 159.)  In May 2003, Dr. Williams wrote that Figueroa was "totally overwhelmed with children, depressed, [and] had decreased libido." (R. 159.)  She further noted that Figueroa was "irritable with mood swings." (R. 159.) These treatment notes, although not necessarily supportive of the assessments in Dr. Williams's mental health questionnaire, cannot fairly be characterized as inconsistent with the mental health questionnaires completed by Dr. Williams.

Second, the Court finds that Dr. Williams's opinion regarding the nature and severity of Figueroa's mental impairment is not inconsistent with the other substantial evidence in the record.  Figueroa's mental health history prior to the alleged period of disability is supportive and consistent with Dr. Williams's findings during the relevant period.  As discussed earlier, Figueroa's file is replete with references to Figueroa's lapses into periods of difficulty sleeping, crying bouts, impaired concentration, decreased appetite, depression, anxiety, and changing combinations of prescribed medication for her mental health condition.  Furthermore, Figueroa testified that: (1) she sleeps poorly; (2)

her appetite is poor; (3) she had been losing weight due to stress and depression; (4) she has problems concentrating, such as leaving things on the stove and setting off the fire alarm; (5) her ability to follow conversations was "not so good;" (6) she experiences low energy levels; (7) she feels paranoid and finds that her temper is explosive; (8) when irritated at her children, she will yell, curse, hit, and throw objects at them; (9) she experiences bouts of crying; and (10) she performs light house chores slowly.  (R. 262-71.)

The only other medical opinion regarding Figueroa's anxiety and depression is from Dr. Amy Brams, a non-examining psychologist who completed a psychiatric review technique form.  (R. 164-180.)  On the form, Dr. Brams completed the section on 12.04 Affective Disorders, and indicated that Figueroa experienced decreased energy, difficulty concentrating or thinking, sleep disturbance that was "okay w/ meds."  (R. 167.)  Her diagnosis was major depression.  (R. 167.)  With regards to the "B" criteria in Listing 12.04, Dr. Brams assessed Figueroa with mild limitations in the restriction of activities of daily living and difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  (R. 174.)  These assessments, however, were based upon the record in 2003 without the benefit of Dr. Williams's more detailed mental health assessments in 2004 and 2005.  Thus, the ALJ should have given less weight, if any, to Dr. Brams due to the fact that the opinion was based upon a non-examining physician's incomplete review of the medical evidence.  20 C.F.R. 416.927(d)(2).

Third, the Court finds that the ALJ erred in discrediting the medically sound opinion of Figueroa's treating physician based upon the ALJ's mere lay opinions and suspicions regarding Figueroa's limitations.  The ALJ offers observations regarding Figueroa's ability "to manage the household and take care of her children" as evidence inconsistent with Dr. Williams's opinion that Figueroa has marked limitations in maintaining social functioning, marked difficulties of concentration, and marked episodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw from that situation or to experience exacerbation of signs and symptoms.  (R. 29.)  The ALJ further suggests that Figueroa must be able to interact with people because "she clearly does everyday since she lives with 6 other people."  (R. 30.)  Courts in this circuit have established that evidence, showing that a claimant suffering from an affective disorders is stable with medication in a home or therapeutic environment, does not negate a physician's opinion that the claimant would have limited ability to function in the work environment.  *See Morales*, 225 F.3d at 319; *Rivera v. Barnhart*, 2005 U.S. Dist. LEXIS 5164, *29 (E.D. Pa. 2005).  Thus, the ALJ's supposition that because Figueroa lives with her minor children and mother at home and is stable at home does not undermine Dr. Williams's assessments that Figueroa cannot function properly in a work setting.

8

The only medical evidence that held inconsistencies with certain findings made by Figueroa's treating physician was from a non-examining physician, whose contrary opinion was outdated since it lacked the benefit of the full medical record.  The ALJ had no substantial evidence in the record that was inconsistent with Figueroa's treating psychiatric physician, and the ALJ never raised any issue with respect to the medically acceptable clinical and laboratory diagnostic techniques employed by Dr. Williams in reaching her opinion.  Thus, Dr. Williams's opinions, as a licensed, medical professional, regarding the nature and severity of Figueroa's affective disorder should have been given at least great weight, if not controlling weight, pursuant to 20 C.F.R. 416.927(d).

### C.     Remedy

The Court, having found that the ALJ's decision was not supported by substantial evidence, must decide the proper remedy.  If the record is fully developed and substantial evidence as a whole indicates that Figueroa is disabled and entitled to benefits, this Court can remand this case for a calculation of benefits.  *See Podedworny*, 745 F.3d at 222.  The Court, however, is not persuaded by Figueroa's argument that the record is fully developed and that substantial evidence, while lacking in support of the ALJ's decision, demonstrates that Figueroa meets or equals Listing 12.04 for Affective Disorders and is therefore *per se* disabled.

The medical evidence as developed in the current record is inconclusive.  The medical notes of Dr. Williams neither fully supports nor contradicts the limitations found in the mental impairment questionnaires completed by Dr. Williams.  Furthermore, there are no contemporaneous treatment notes from Dr. Williams during the period when the mental impairment questionnaires were completed by Dr. Williams.  Thus, as Defendant recognizes, there are gaps in the medical record that require clarification and additional evidence from Dr. Williams. (Def.'s Br. 4.)  Additionally, although Dr. Brams opined that Figueroa did not meet the requirements for Listing 12.04, the mental limitations found by Dr. Brams were based upon the medical record as developed at the time and failed to include Figueroa's later submissions of Dr. Williams's evaluations.  The Court is unable to conclude whether Dr. Brams's opinions would have changed in light of the additional evidence.  Thus, the Court cannot conclude based upon the current record that substantial evidence supports a finding that Figueroa meets or equals a Listing in 12.04.

The ALJ is directed upon remand to determine whether the medical evidence supports Dr. Williams's medical opinion that Figueroa meets or equals a Listing in 12.04.  The ALJ should more fully develop the record and clarify the issues identified in the Court's Letter Opinion.  In the Court's view, the record would likely benefit from an independent mental health examination.  The Court, however, leaves the determination of

how best to develop and clarify the record to the competence of the ALJ.

## II. Other Factors

### A. Residual Functional Capacity

Figueroa also argues that substantial evidence fails to support the ALJ's determination that Figueroa could perform the full range of sedentary work with certain non-exertional limitations. Specifically, Figueroa finds fault with the ALJ's failure to credit and discuss the medical evidence and opinions of Figueroa's examining physicians. Although the ALJ discussed the medical evidence, the Court agrees that the ALJ failed to explain what medical evidence and opinions he chose to credit and discredit.

Figueroa has visited numerous physicians regarding her lower back pain including, but not limited to, Dr. Patrick Foye, Dr. Carlos Sacristan, and Dr. Howard Baruch. Dr. Patrick Foye examined Figueroa on December 4, 2002 for lower back pain. He concluded that Figueroa suffered from chronic low back pain with lumbar disc herniation and radiculopathy including mild to moderate motor and sensory impairments. (R. 125.) In addition, Dr. Foye noted that Figueroa exhibited some right knee symptoms and symptoms suggestive for right carpal tunnel syndrome. (R. 125.) Dr. Foye opined that Figueroa could: (1) lift and carry up to twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk less than two hours in an eight-hour workday; and (3) must periodically alternate sitting and standing to relieve pain or discomfort; and (4) push and pull so long as it was limited in the lower extremities. (R. 126-27.) Subsequent visits to other doctors noted back and pelvic pain as well as neck and shoulder pain, but no other doctor opined on Figueroa's ability to perform work.

As stated earlier, although the ALJ may appropriately choose to weigh the medical evidence including the opinion of examining physicians, the ALJ cannot reject medical evidence without giving an appropriate reason. *See Morales*, 225 F.3d at 317. In this case, the ALJ failed to explain why he choose to reject Dr. Foye's medical opinion regarding Figueroa's functional limitations. The record consistently evidences Figueroa's ongoing lower back pain and medical tests including MRIs in January 2001 and February 2004 support Dr. Foye's diagnosis of lumbar disc herniation. (R. 119, 183, 192.) Therefore, it was error for the ALJ to dismiss Dr. Foye's opinion without discussion.

Figueroa urges the Court to adopt the findings of Dr. Foye and determine that Figueroa's impairments prevent her from performing even sedentary-level work, and therefore, Figueroa should be deemed disabled. The Court, however, must decline to conclude that Figueroa was disabled based upon the current record. Figueroa asserts that

the date of disability was December 30, 2002.  Since Dr. Foye's opinion regarding her abilities was prior to the relevant period, this Court is unable to determine whether Figueroa continued to experience the same exertional limitations during the relevant period.  Thus, the Court cannot adopt the findings of Dr. Foye without the benefit of a more developed medical record.

Upon remand, the ALJ is directed to appropriately weigh the medical evidence regarding Figueroa's functional limitations resulting from her lower back pain, and explain the reasons for accepting or rejecting the medical opinions of Figueroa's examining physicians.  Furthermore, the ALJ is directed to elaborate on the evidence that was factored into his determinations regarding Figueroa's residual functional capacity.

### B.      Additional Clarifications and Development of the Record

Figueroa asserts that the ALJ additionally erred by: (1) determining in a conclusory manner that the combination of Figueroa's impairments did not equal a Listing; (2) failing to support his conclusions regarding Figueroa's mental residual functional capacity with medical evidence; and (3) failing to include all of Figueroa's limitations in the hypothetical posed to the vocational expert.  The Court notes that the Commissioner has not challenged Figueroa's findings of error on these grounds.  Upon review of the ALJ's decision and the record, the Court agrees that the ALJ should upon remand: (1) explain why the combination of Figueroa's impairments did not meet or equal a Listing; (2) elaborate on how the ALJ arrived at his conclusion that Figueroa's only non-exertional limitations included having no contact with the public and only limited contact with co-workers and supervisors; and (3) pose hypotheticals to the vocational expert that includes Figueroa's full residual functional capacity.

### Conclusion

For the foregoing reasons, the ALJ's final decision is **REVERSED and REMANDED** for a new hearing and review of Figueroa's claim consistent with this Letter Opinion.  An appropriate Order accompanies this Letter Opinion.

s/William J. Martini<br>
William J. Martini, U.S.D.J.